Ronald L.M. Goldman, Esq. (State Bar No. 33422)
*rgoldman@baumhedlundlaw.com*
A. Ilyas Akbari, Esq. (State Bar No. 228051)
*iakbari@baumhedlundlaw.com*
**BAUM HEDLUND ARISTEI & GOLDMAN, PC**
12100 Wilshire Boulevard., Suite 950
Los Angeles, California  90025-7114
Telephone:  (310) 207-3233
Facsimile:  (310) 207-4204

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONG HOE KOO; YEONG A. SONG; D.K., a minor by and through her father and Guardian Ad Litem JONG HOE KOO; and J.K., a minor by and through her father and Guardian Ad Litem JONG HOE KOO,<br><br>Plaintiffs,<br><br>v.<br><br>ASIANA AIRLINES, INC., a corporation; and THE BOEING COMPANY, a corporation,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>1. **NEGLIGENCE** (ASIANA AIRLINES)<br><br>2. **PASSENGER LIABILITY** (ASIANA AIRLINES)<br><br>3. **NEGLIGENCE** (THE BOEING COMPANY)<br><br>4. **BREACH OF WARRANTY** (THE BOEING COMPANY)<br><br>5. **STRICT LIABILITY** (THE BOEING COMPANY)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs JONG HOE KOO; YEONG A. SONG; D.K., a minor by and through her father and *Guardian Ad Litem* JONG HOE KOO; and J.K., a minor by and through her father and *Guardian Ad Litem* JONG HOE KOO (collectively, "Plaintiffs"), through their undersigned attorneys, bring this action against the Defendants ASIANA AIRLINES, INC. (hereinafter "ASIANA") and THE BOEING COMPANY (hereinafter "BOEING"), as follows:

COMPLAINT FOR DAMAGES

**JURISDICTION**

1.     This Court has jurisdiction under 28 U.S.C. § 1331(a), pursuant to Article 33 of the Convention for the Unification of Certain Rules for International Carriage by Air (hereinafter the "Montreal Convention"), which both the United States and the Republic of Korea have ratified.  As a party to the International Air Carrier Transport Association Intercarrier Agreement on Passenger Liability, which specifically removes limitations on damages, Defendant ASIANA is a signatory to the Montreal Convention.  Under Article 33 sections (1) and (2) of the Montreal Convention, passenger Plaintiffs purchased their tickets for the subject flight in the Northern District of California.

2.     This Court has jurisdiction under 28 U.S.C. § 1332.  The principal and permanent residences of Plaintiffs is in this District.  Defendants ASIANA and BOEING maintain corporate offices in Republic of Korea, in Illinois, and in California in this district.   The amount in controversy exceeds the $75,000 jurisdictional minimum of this Court.  The ultimate destination in the contracts of carriage of Plaintiffs was San Francisco International Airport (hereinafter "SFO"), located in this District.   ASIANA routinely operates services for the carriage of passengers by air to SFO.  Defendants have sufficient minimum contacts necessary to subject them to personal jurisdiction in this Court because ASIANA and BOEING both maintain places of business and conduct business in California.

**VENUE**

3.     Venue in the Northern District of California is proper pursuant to 28 U.S.C. § 1391 and Local Rule 3-2 because the crash itself and a substantial portion of the events and omissions giving rise to the claims alleged herein occurred in this District.  Further, Plaintiffs' principal and permanent places of residence are in the Northern District of California, and Defendants both maintain business contacts and commerce in California sufficient for personal jurisdiction.

**PARTIES**

4.     Plaintiff JONG HOE KOO is married to Plaintiff YEONG A. SONG.  They are residents of the United States and of California, and maintain their principal residence in this District.

5.      Plaintiff D.K., a minor under the age of 18, brings her claims through her father and guardian JONG HOE KOO.  D.K. is a resident of the Northern District of California.

6.      Plaintiff J.K., a minor under the age of 18, brings his claims through his father and guardian JONG HOE KOO.  J.K. is a resident of the Northern District of California.

7.      Plaintiffs were passengers on board ASIANA Flight No. 214 bound for San Francisco, California when it crashed on July 6, 2013 at SFO (hereafter "ASIANA Crash").

8.      Defendant ASIANA AIRLINES, INC. is a registered business entity of the California Secretary of State, with an active status.  ASIANA routinely engages in continuous and systematic business in this District.  ASIANA's principal place of business is in Seoul, Republic of Korea.

9.      ASIANA entered into the contracts of carriage with Plaintiffs and at all material times was in control of, and responsible for, their safe transport to San Francisco, California.

10.     Defendant THE BOEING COMPANY, incorporated in Delaware, has its principal place of business in Illinois.  BOEING is and at all relevant times has been a registered business entity of the California Secretary of State with an active status.  BOEING routinely engages in continuous and systematic business in this District.

11.     BOEING manufactured and sold the subject aircraft to ASIANA, and contracted with ASIANA to train its pilots, including those on board Flight 214 on July 6, 2013.

12.     At all times herein mentioned, defendants, and each of them, and their aggregates, corporates, associates, and partners, and each of them, were the agent, servant, employee, assignee, permissive user, successor in interest or joint venturer of each other, and were acting within the time, purpose or scope of such agency or employment or permission; and all acts or omissions alleged herein of each such defendant were authorized, adopted, approved, or ratified by each of the other defendants.

## FACTUAL BACKGROUND

13.     The ASIANA Flight 214 aircraft was a Boeing 777-200ER, Registration No. HL7742 (hereinafter "Subject Aircraft").  It was designed, manufactured, tested, assembled, warranted, inspected, serviced, marketed, advertised, distributed, trained and/or sold by BOEING.

On information and belief, ASIANA purchased the Subject Aircraft from BOEING in 2006.  In addition to boasting of the 777-200ER's unprecedented width and capacity, BOEING touts the many unique operating features this model offers that are optional on other aircraft.[1]



Figure 1: Subject Aircraft landing at Hong Kong International Airport[1]

14.     Plaintiffs were among the passengers on board the Subject Aircraft.

15.     ASIANA Flight 214 was carrying 291 passengers and 16 crew members when it crashed on July 6, 2013 into the sea wall at SFO.  The flight had originated in Shanghai and stopped in Seoul before heading to the United States.  The plane was instructed to land on SFO Runway 28L. The SFO air traffic controller gave landing clearance.

16.     The ASIANA Crash occurred at SFO at approximately 11:26 a.m. local time on July 6, 2013, when the Subject Aircraft landed short of Runway 28L's threshold at SFO.

The plane came into SFO too low and too slow, colliding with the seawall that projects into San Francisco Bay.  The landing gear and the tail section struck the seawall, both separating from the plane.  In addition, both engines, the vertical stabilizer and both horizontal stabilizers separated

---

[1]Credit: http://www.flickr.com/photos/46423105@N03/6052589349/ and
http://en.wikipedia.org/wiki/File:Asiana_Airlines_Boeing_777-
200ER;_HL7742@HKG;31.07.2011_614fz_%286052589349%29.jpg

from the aircraft as it spun and slid approximately 2,400 feet from the initial point of impact at the sea wall.

17.     The crash caused passengers, including Plaintiffs, to be violently thrown about the cabin.  Luggage toppled from the overhead compartments.  Passengers, held in place by lap-only seatbelts, jolted in all directions, many slamming their heads against seat backs and armrests.  Seats were dislodged throughout the cabin.  Oil spewed from the wrecked aircraft.

18.     Federal Aviation Administration ("FAA") regulations require that all planes must be manufactured to allow for a complete evacuation within 90 seconds after an emergency stop.  Despite this regulation and policy, passengers and crew waited approximately ninety seconds after the aircraft had come to a full stop for the emergency doors and chutes to open, and for the pilots to authorize evacuation.  The plane caught fire and was left a charred wreck.  The rear of the plane had separated and half of the roof was ripped open.  On information and belief, at least 180 passengers have suffered physical injuries, and further resulted in the deaths of three teenage female passengers.

19.     The National Transportation Safety Board (hereinafter "NTSB") closed the on-scene investigation of the crash on July 16, 2013.  It sent the cockpit voice recorder and the flight data recorder to Washington, D.C., where a preliminary review of the instruments was completed.  Plaintiffs are informed, believe and thereon allege that the pilots did not discuss the approach speed until nine seconds before the crash, and that one of the pilots made an internal call to abort the landing about three second before the crash.

20.     Plaintiffs are informed, believe and thereon allege the following: the pilots reportedly sought to apply thrust and abort the landing too late for any possible recovery; the landing speed was significantly below 137 knots, the minimum speed necessary for a safe landing, according to published reports, and came in far too slowly to land safely; the plane was reportedly flying at least 39 miles per hour below its target speed of 158 miles per hour; and a stall warning sounded on Flight 214 just four seconds before impact.

21.     Plaintiffs are informed, believe and thereon allege that the probable flight path of the Subject Aircraft, from 400 feet AGL to point of rest, is depicted in Figure 2 below.



Figure 2: Flight Path of Subject Aircraft[2]

22.     Plaintiffs are informed, believe and thereon allege the following: the flight recorder data reportedly also showed that the wing flaps were responding as normal; a preliminary review of the engines reportedly showed that both were producing power at the time of impact; and the pilots were not tested for drugs or alcohol because ASIANA prohibited such testing.

23.     Plaintiffs are informed, believe and thereon allege the following: statements by the ASIANA Flight 214 pilots in reported interviews with the NTSB after the accident raise major concerns about a shocking lack of pilot training and ability; the pilots reportedly said they thought the aircraft's auto-throttle system, a type of cruise control for jetliners, was maintaining adequate speed, impliedly admitting that they had relied on the automated system and failed to monitor air speed as they should continuously have done every few seconds: and the Flight 214 pilots lacked practice and ability in landing a Boeing 777 by visual flight rules.

24.     Plaintiffs are informed, believe and thereon allege the following: among a number of serious errors and omissions, the ASIANA Flight 214 flight crew failed to observe basic

---

[2] Los Angeles Times / MCT 2013

1  procedures for a visual landing approach into SFO; failed to appropriately monitor flight

2  conditions on approach; failed to appropriately communicate and react in the cockpit to

3  deteriorating flight conditions; and failed to quickly and safely evacuate all those aboard upon the

4  crash.

5         25.    Plaintiffs are informed, believe and thereon allege that BOEING undertook to

6  train ASIANA pilots including the Flight 214 crew, but did not meet its commitment to

7  adequately train said pilots, nor did BOEING ensure that the Subject Aircraft was safely and

8  adequately equipped.

9         26.    Plaintiffs are informed, believe and thereon allege the following: the pilots and

10  flight crew's failure to comply with rudimentary cockpit resource, flight and landing management

11  safety protocols turned what should have been a routine landing into a catastrophe; that the

12  ASIANA Crash occurred due to the gross negligence and recklessness of both Defendants

13  ASIANA and BOEING, in violation of numerous international and United States airline industry

14  standards and established flight rules; and that BOEING and ASIANA both failed to adequately

15  train and supervise Asiana's pilots to ensure passengers' safety.

16         27.    Plaintiffs are informed, believe and thereon allege that in 2002, BOEING

17  contracted with ASIANA to train all of ASIANA's pilots at its own training facilities and that in

18  2006, when ASIANA purchased the Subject Aircraft, BOEING opened a BOEING 777 training

19  facility in South Korea near the Gimpo International Airport.

20         28.    Plaintiffs are informed, believe and thereon allege that BOEING and ASIANA

21  knew or should have known that their training procedures fell below the standard of care, and

22  were putting passengers' lives at risk; that at the simulator training at BOEING training facilities,

23  ASIANA requires completion of an Initial Operating Experience for pilots new to a certain type

24  of aircraft.; that such pilots must complete twenty flights with sixty hours of flight time under the

25  supervision of an experienced supervising pilot; and that this program calls for significantly less

26  flying hours than what international standards deem appropriate to qualify pilots as sufficiently

27  experienced.

28

29.     Plaintiffs are informed, believe and thereon allege that Pilot Lee Kang-guk was still in training to fly the BOEING 777, and Flight 214 was his first flight to SFO on this type of plane; that he had experienced only forty-three previous hours at the controls of any 777; and that seated next to him on Flight 214 was a supervising pilot with whom he had never flown and who had never before served as a supervising pilot.

30.     On information and belief, ASIANA Airlines has an unusually high rate of aborted landings at SFO; ASIANA's number of aborted landings, or "go-arounds," is six to eight times greater than would be expected given the airline's total number of flights into SFO; and the pilots on the ASIANA flight that crashed on July 6 called for a "go-around" seconds before the Boeing 777 slammed into the seawall.

31.     Upon information and belief, after the crash, airline industry officials reportedly went through six weeks of records and found a "considerably higher" number of aborted landings by ASIANA than would be expected; the South Korean airline reportedly accounts for only about 0.5 percent of SFO's six hundred daily landings though its percentage of go-arounds is reportedly well above that.  One such aborted landing reportedly happened on July 19, 2013, just days after SFO reopened the runway where Flight 214 had crashed.  The ASIANA jet pulled out of its early-afternoon landing just 14 seconds from touchdown.

32.     The ASIANA Crash occurred when the aircraft's speed dropped below the minimum speed necessary to safely approach the runway.  The pilots had set the airspeed at the required level of 137 knots, and assumed the auto-throttle control system would maintain this speed.  They became aware of the plane's actual speed only seconds before the crash because they had been focused on aligning the aircraft to center on Runway 28L, and did not realize that the auto-throttle control system was not engaged.

33.     On or about October 6, 2013, Chairman Hersman provided a briefing wherein she stated that one of the three pilots in the Subject Aircraft cockpit told investigators that he thought the plane's automatic throttle was maintaining speed as the plane descended to land, but later discovered it wasn't sending power to the engine.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



Figure 3: Figure Aircraft at Rest Post Crash [3]

15
16
17
18
19

34.     Plaintiffs are informed, believe and thereon allege that BOEING knew or should have known that the design of its auto-throttle control systems, auto-pilot control systems, and/or low airspeed warning systems, their improper installation, and/or their defects, would result in dangerously inadequate warning to pilots about low airspeed, a common cause of plane crashes.

20
21
22
23
24
25
26

35.     Plaintiffs are informed, believe and thereon allege that BOEING was aware that its low airspeed warning system was inadequate; that the BOEING 777 has a warning system which sounds a standard warning tone followed by a message on a display screen with the text "AIRSPEED LOW," yet this same screen displays several other notifications at any given time; and that during landing, pilots are routinely paying attention to numerous indicators and instructions simultaneously, as was the case on Flight 214.

27
28

[3] Courtesy: https://www.metabunk.org/threads/hl7742-aar214-777-crash-korean-asiana-airlines-san-francisco.1956/

36.     Plaintiffs are informed, believe and thereon allege that BOEING has in recent years retrofitted four hundred of the almost four thousand 737 planes in existence with a warning system that features a repeated aural command of "LOW AIRSPEED"; that this was in response to the 2009 Turkish Airlines Flight 1951 crash of a BOEING 737, after which the Dutch Safety Board recommended that BOEING evaluate its warning systems; that the NTSB has encouraged the FAA to require aural warning systems, and Airbus SAS, BOEING's chief competitor, has installed an aural warning system on all of its A320 line aircraft since 1995; and that despite this knowledge, BOEING has not installed such systems in its 777 aircraft.

37.     Vehicle manufacturers, including airplane manufacturers, have known for decades the importance of restraining occupants in order to prevent and/or minimize occupant injuries in the event of a collision, crash or accident.  Automobile manufacturers long ago moved to include three point harnesses and airbags in their vehicles in order to protect occupants.

38.     Shoulder harnesses are likewise common throughout the aviation industry.   All seats in general aviation aircraft are required to have shoulder harnesses.  Federal regulations, including 14 C.F.R. § 91.521, require all flight crew stations (e.g. pilots and flight attendants) to have a restraint system consisting of safety belt and shoulder harness combinations.  Many first class cabins and private jets already have the lap belt and shoulder harness combination.

39.     The Boeing Company and Asiana each failed to timely adopt three point harnesses in its passenger planes, including the plane involved in the Asiana 214 crash, and should have adopted them years ago, including in the aircraft that crashed in this case.  Plaintiffs are informed and believe that three point harnesses would have prevented or mitigated many of the passenger injuries in the Asiana 214 crash, including injuries to Plaintiffs herein.

//

//

//

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



24      Figures 4 and 5: Photos of Seats on Subject Aircraft Post Crash[4]

25          40.    Plaintiffs are informed, believe and thereon allege that moments after the crash,

26   the pilots delayed flight attendants from evacuating the plane while they talked to the SFO tower.

27   [4] Courtesy: NTSB and Reuters and http://www.nydailynews.com/news/national/asiana-flight-
     214-pilots-realized-seconds-crash-approach-slow-article-1.1392535

28

Passengers were instructed to remain in their seats amidst the wreckage. Only when a flight attendant notified the pilots that she saw smoke and fire outside did they order evacuation.

41.     Plaintiffs are informed and believe that the emergency exits did not open until approximately ninety seconds after the plane had ceased moving, despite FAA policy that planes must be manufactured such that all passengers may evacuate within ninety seconds. Further complicating the perilous evacuation process were two evacuation slides that had opened inside the plane during the crash. While normally designed to open outside a plane when put into an engaged position, these slides opened without command and blocked passengers and crew from exiting the smoldering plane.

42.     Defendants', and each of their, acts, omissions and failures constituted gross, wanton, and willful disregard for the rights and safety of all passengers aboard Flight 214 and needlessly caused injuries, damages, and deaths to innocent passengers.

43.     As a direct and proximate result of the acts, omissions and failures of defendants, and each of them, Plaintiffs have suffered, and continue to suffer, from economic losses and physical injuries, as well as mental and emotional injuries arising therefrom, all of which have caused Plaintiffs physical, mental, emotional and nervous pain and suffering, all to their general damages in an amount in excess of the minimum jurisdiction of the court to be proven at the time of trial. In addition, Plaintiffs JONG HOE KOO and YEONG A. SONG, husband and wife, have lost, and will continue to lose, the comfort, society, support, and consortium of each other, as a direct and proximate result of the ASIANA Crash. They have suffered, and continue to suffer, serious emotional damages therefrom.

44.     As a direct and proximate result of the acts, omissions and failures of defendants, and each of them, Plaintiffs were compelled to and did incur expenses for medical care, hospitalization, rehabilitation, care costs, and other incidental expenses, and will have to incur additional like expenses in the future, all to Plaintiffs' damages in an amount to be determined according to proof at the time of trial.

45.     As a direct and proximate result of the acts, omissions and failures of defendants, and each of them, Plaintiffs have suffered loss of income, and / or a loss of earning capacity in an amount to be determined according to proof at the time of trial.

46.     As a further direct and proximate result of the acts, omissions and failures of defendants, and each of them, Plaintiffs have suffered the loss of their personal property, including but not limited to luggage and carry on items and the personal effects contained therein, in an amount to be determined according to proof at the time of trial.

## FIRST CLAIM FOR RELIEF

### NEGLIGENCE

### (Against Defendant ASIANA AIRLINES, INC.)

47.     Plaintiffs incorporate by reference each and every prior and subsequent allegation as though fully set forth herein.

48.     At all times relevant, ASIANA was a common carrier engaged in the business of providing air transportation for fare-paying passengers on international flights to the United States. ASIANA, as a common carrier, owed the passengers of Flight 214, including Plaintiffs, a duty of utmost care and the vigilance for the safe transport of passengers.

49.     Pursuant to Part 121 of the Federal Aviation Regulations [14 C.F.R. 121.1 et seq.], ASIANA held and Air Carrier Operating Certificate that authorized it to serve as a common carrier in air transportation in the United States. As such, ASIANA owed a duty of care to its passengers, including Plaintiffs, consistent with the requirement that it maintain and operate its aircraft in the safest manner possible.

50.     ASIANA's common law duty also required it to maintain and operate it aircraft, including the Subject Aircraft, to the highest degree of safety and care.

51.     At all times herein ASIANA negligently, carelessly, and recklessly, breached its duty of care to passengers of Flight 214, including Plaintiffs, by failing to safely maintain, operate, maneuver, handle, control, equip, manage and/or pilot Flight 214 and/or failing to properly and safely train, teach, educate, prepare, inform, alert, guide or tutor its pilots, crew and

1  other personnel to operate a passenger aircraft and by failing to timely and safely respond during

2  emergency situations, including the one experienced by Flight 214.

3      52.     As a direct and proximate result of Defendant ASIANA's acts and omissions,

4  including gross negligence and recklessness of the flight crew on Flight 214 and the inadequate

5  training and supervision Defendants provided to said crew, which caused the ASIANA Crash,

6  Plaintiffs were seriously injured and damaged as alleged herein and will continue to suffer from

7  their physical, mental, and economic injuries for the foreseeable future.

8                                **SECOND CLAIM FOR RELIEF**

9                                      **NEGLIGENCE**

10    **(Against Defendant ASIANA AIRLINES, INC., Pursuant to the Montreal Convention)**

11     53.     Plaintiffs incorporate by reference each and every prior and subsequent allegation

12  as though fully set forth herein.

13     54.     On November 4, 2003, the United States signed, ratified and adopted as law the

14  Montreal Convention, a multilateral international treaty which supplies rules governing

15  international carriage by air.  Because the transportation provided to Plaintiffs was between points

16  in two different nations and because both these nations are signatories to the Montreal

17  Convention, the transportation was international carriage as defined by Article 1(2) of the

18  Convention, and the Convention is therefore applicable to this action pursuant to Article 1(1).

19     55.     Pursuant to Article 17 of the Montreal Convention, the carrier is liable for damage

20  sustained in case of death or bodily injury of a passenger upon condition only that the accident

21  which caused the death or injury took place on board the aircraft or in the course of any of the

22  operations of embarking or disembarking.

23     56.     The injuries Plaintiffs suffered took place on board the Subject Aircraft.

24     57.     Pursuant to Article 17 of the Montreal Convention, Defendant ASIANA is liable

25  for damages sustained by Plaintiffs as passengers aboard Flight 214, as said injuries and damages

26  occurred while they were on board the Subject Aircraft and/or in the course of the operations of

27  disembarking from the Subject Aircraft.

28

58.     Defendant ASIANA is also liable for loss of consortium and other damages suffered by JONG HOE KOO and YEONG A. SONG in that said claims derive from damages suffered by passenger plaintiffs and are cognizable under California law.

59.     Defendant ASIANA was in control of Flight 214 and owed non-delegable duties to all passengers for its safe operation at all modes of flight, including the landing approach into SFO on July 6, 2013.

60.     Defendant ASIANA breached those duties by failing to observe the most fundamental procedures for a visual landing approach into SFO, failing to appropriately monitor flight conditions on approach, failing to communicate and react in the cockpit to those flight conditions, and failing to evacuate passengers and crew as safely and quickly as possible.

61.     ASIANA's liability under the Montreal Convention is absolute up to 113,100 Special Drawing Rights (SDR) pursuant to Article 21(1).

62.     ASIANA is further liable to Plaintiffs under Article 21(2) of the Montreal Convention for all personal injury damages exceeding 113,100 SDR unless it proves that (a) Plaintiffs' injuries were not due to the negligence or other wrongful act or omission of ASIANA or its servants or agents; or (b) the injuries were solely due to the negligence or other wrongful act or omission of a third party.

63.     As a direct and proximate result of Defendant ASIANA's acts and omissions, including gross negligence and recklessness of the flight crew on Flight 214 and the inadequate training and supervision Defendants provided to said crew, which caused the ASIANA Crash, Plaintiffs were seriously injured and damaged as alleged herein and will continue to suffer from their physical, mental, and economic injuries for the foreseeable future.

64.     The ASIANA Crash occurred due to the negligence, wrongful acts and omissions of Defendants ASIANA and BOEING and their servants and agents, and each of them, and not due to the sole negligence or other wrongful act or omission of any third party.

1

**THIRD CLAIM FOR RELIEF**

2

**NEGLIGENCE**

3

**(Against Defendant THE BOEING COMPANY)**

4      65.     Plaintiffs incorporate by reference each and every prior and subsequent allegation

5    as though fully set forth herein.

6      66.     At all relevant times herein, Defendant BOEING was the designer, manufacturer,

7    warranter, promoter, and seller of the BOEING 777-200ER aircraft.    It maintained the

8    responsibility of testing and inspecting such aircraft, including the Subject Aircraft, to ensure

9    suitability for passenger air transport.  BOEING knew or should have known that its auto-throttle

10   control and low airspeed warning systems were not adequate to ensure safe and effective air

11   operations.

12     67.     At all relevant times herein, BOEING oversaw, managed and conducted the

13   training protocols and training facilities which trained ASIANA's pilots.  BOEING knew or

14   should have known that ASIANA pilots were not adequately trained in basic landing and safety

15   management protocols, and that pilots of the Subject Aircraft were not qualified or trained to

16   safely operate Flight 214 on July 6, 2013.

17     68.     At all relevant times herein, BOEING knew or should have known that passenger

18   seats with the use of lap only belts instead of three point harnesses (lap belts and shoulder

19   harnesses) would cause or contribute to otherwise avoidable injuries because a three point harness

20   is many times safer at containing passengers and preventing serious injuries than is a lap belt

21   alone.   Only a few business class seats on the plane had passenger restraints that included

22   chest/torso restraints.

23     69.     The  ASIANA  Crash  and/or  crash  injuries  were  the  result  of  BOEING's

24   recklessness, gross negligence, carelessness, and negligence, as well as its other wrongful acts

25   and omissions as set forth herein.   As a direct and proximate result of BOEING's acts and

26   omissions, Plaintiffs were seriously injured and damaged as alleged herein and will continue to

27   suffer from their physical, mental, and economic injuries for the foreseeable future.

28

**FOURTH CLAIM FOR RELIEF**

**BREACH OF WARRANTY**

**(Against Defendant THE BOEING COMPANY)**

70.     Plaintiffs incorporate by reference each and every prior and subsequent allegation as though fully set forth herein.

71.     At all times relevant herein, Defending BOEING represented expressly and/or impliedly that the Subject Aircraft, its parts and components, and its accompanying warnings and instructions, were safe and appropriate for the purpose of commercial passenger air travel, were of merchantable quality, and were free from defects.

72.     Plaintiffs were intended third-party beneficiaries of BOEING's warranties as ticketed passengers of ASIANA Flight 214.

73.     The ASIANA Crash and injuries and damages suffered by the Plaintiffs resulted directly from BOEING's breach of the aforementioned warrantees.  As a direct and proximate result of BOEING's acts and omissions, Plaintiffs were seriously injured and damaged as alleged herein and will continue to suffer from their physical, mental, and economic injuries for the foreseeable future.

**FIFTH CLAIM FOR RELIEF**

**STRICT LIABILITY**

**(Against Defendant THE BOEING COMPANY)**

74.     Plaintiffs incorporate by reference each and every prior and subsequent allegation as though fully set forth herein.

75.     At all times relevant herein, BOEING designed, manufactured, assembled, warranted, promoted, distributed, tested, maintained, serviced, inspected and/or sold BOEING 777-200ER aircraft for the purpose of commercial passenger air transportation.

76.     The Subject Aircraft was operated by ASIANA for this intended purpose of commercial passenger air transportation at all relevant times hereinabove set forth.  ASIANA used the Subject Aircraft in a manner reasonably foreseeable to BOEING.

77. At all times relevant herein, Subject Aircraft proved to be unsafe, defective, dangerous and not airworthy and/or not crashworthy as a result of BOEING's defective design, manufacture, distribution, testing, assembly, maintenance, service, and/or inspection of the Subject Aircraft.

78. As a direct and proximate result of BOEING's acts and omissions, Plaintiffs were seriously injured and damaged as alleged herein and will continue to suffer from their physical, mental, and economic injuries for the foreseeable future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and each of them, pray for judgment for each Plaintiff against Defendants, and each of them, as follows:

A. For compensatory and general damages according to proof, including but not limited to loss of consortium damages for Plaintiffs JONG HOE KOO and YEONG A. SONG;

B. For past and future medical and care expenses and incidental expenses according to proof;

C. For past and future loss of earnings and earning capacity according to proof;

D. For loss of personal property and personal effects according to proof;

E. For punitive damages to ensure that an example is made of defendants, and each of them, to deter similar future conduct;

F. For any other damages to which Plaintiffs may be entitled under applicable law;

G. For attorneys and expert/consultant fees under applicable law;

H. Costs incurred in bringing this suit;

I. For pre- and post-judgment interest on all damages under applicable law; and

J. Such other and further relief as the Court may deem just and proper.

/ / /

/ / /

1    Dated: November 27, 2013              Respectfully submitted,

2                                          BAUM HEDLUND ARISTEI & GOLDMAN PC

3

4                                          By:_____
                                                 A. Ilyas Akbari, Esq.
5

6                                          Ronald L.M. Goldman, Esq. (State Bar No. 33422)
                                           *rgoldman@baumhedlundlaw.com*
7                                          A. Ilyas Akbari, Esq. (State Bar No. 228051)
                                           *iakbari@baumhedlundlaw.com*
8                                          BAUM HEDLUND ARISTEI & GOLDMAN, PC
                                           12100 Wilshire Boulevard., Suite 950
9                                          Los Angeles, California  90025-7114
                                           Telephone:  (310) 207-3233
10                                         Facsimile:  (310) 207-4204

11                                         *Attorneys for Plaintiffs*

12

13                              **<u>DEMAND FOR JURY TRIAL</u>**

14           Plaintiffs hereby demand a trial by jury for all claims for which a jury trial is available

15    pursuant to Federal Rules of Civil Procedure Sections 38(a) and (b).

16

17    Dated: November 27, 2013              Respectfully submitted,

18                                          BAUM HEDLUND ARISTEI & GOLDMAN PC

19

20                                          By:_____
                                                 A. Ilyas Akbari, Esq.
21

22                                         Ronald L.M. Goldman, Esq. (State Bar No. 33422)
                                           *rgoldman@baumhedlundlaw.com*
23                                         A. Ilyas Akbari, Esq. (State Bar No. 228051)
                                           *iakbari@baumhedlundlaw.com*
24                                         BAUM HEDLUND ARISTEI & GOLDMAN, PC
                                           12100 Wilshire Boulevard., Suite 950
25                                         Los Angeles, California  90025-7114
                                           Telephone:  (310) 207-3233
26                                         Facsimile:  (310) 207-4204

27                                         *Attorneys for Plaintiffs*

28